J-S18001-16
J-S18002-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: INVOLUNTARY TERMINATION OF PARENTAL RIGHTS TO J.E.D., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| APPEAL OF: B.A.D., BIOLOGICAL MOTHER, | |
| Appellant | No. 1671 MDA 2015 |

Appeal from the Order Entered September 9, 2015
In the Court of Common Pleas of Centre County
Orphans' Court at No(s): 4052-2015

| | |
|---|---|
| IN RE: INVOLUNTARY TERMINATION OF PARENTAL RIGHTS TO J.E.D., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| APPEAL OF: C.S., SR., BIOLOGICAL FATHER, | |
| Appellant | No. 1727 MDA 2015 |

Appeal from the Order Entered September 9, 2015
In the Court of Common Pleas of Centre County
Orphans' Court at No(s): 4052-2015

BEFORE:  BOWES, LAZARUS AND STRASSBURGER,* JJ.

MEMORANDUM BY BOWES, J.:  **FILED MARCH 04, 2016**

In these consolidated appeals, B.A.D. ("Mother") and C.S., Sr. ("Father"), appeal from the orphans' court order entered on September 9,

---

* Retired Senior Judge assigned to the Superior Court.

2015, which involuntarily terminated their parental rights to their minor son, J.E.D., born in August of 2014.[1]  After careful review, we affirm.

The record reveals that Mother has a lengthy prior history of involvement with Centre County Children and Youth Services ("CYS") dating back to 2009.  N.T., 7/30/15, at 51.  J.E.D. is the fourth of Mother's children to be placed in foster care, and Mother's parental rights to her three older children have already been terminated.[2]  *Id*. at 5-6.  Mother currently is in a relationship with Father, who has a history of engaging in inappropriate sexual contact with minors.[3]  *Id*. at 36-37.  In 2007, Father pled guilty to indecent assault, and was ordered not to "be in the lone company or be in a supervisory capacity of any person under the age of 18."  Petitioner's Exhibit 1.  Father subsequently completed sex offender treatment at Project Point of Light.  N.T., 7/30/15, at 36.  However, in 2013, Father sent a picture of his genitals to a minor, and it was recommended that Father receive additional treatment.  *Id*. at 36-38.  Father failed to attend sessions consistently, and

---

[1] These consecutively listed appeals arise from the same set of facts and level nearly identical challenges to the orphans' court order that terminated the parental rights of both Mother and Father jointly.  Accordingly, we consolidated the appeals for disposition.

[2] Mother's three older children are B.A.D., D.M.D., and H.R.D.  This Court affirmed the orders and decrees terminating Mother's parental rights to these children on July 20, 2015.  *See In re B.A.D.*, 125 A.3d 455 (Pa. Super. 2015) (unpublished memorandum).

[3] Father is not the biological parent of Mother's three older children.

he was discharged from the program. *Id*. at 38, 45; GAL Exhibit 1 (letter indicating that Father had been discharged due to "failure to return to complete therapy").

CYS obtained an order for protective custody of J.E.D. due to an injury he sustained on the day after his birth. *See* Petitioner's Exhibit 1 (Order for Emergency Protective Custody). Specifically, J.E.D. fell and struck his head on the floor of Mother's hospital room. N.T., 7/30/15, at 8, 10-11, 23, 29, 54. Both Mother and Father were in the room with J.E.D. at the time of his injury, but the parents reported that they were asleep, and did not witness J.E.D. fall. *Id*. at 10-11, 23-24. As a result of this incident, J.E.D. suffered a skull fracture and subdural hematoma. *Id*. at 8, 54. J.E.D. was adjudicated dependent by order dated August 28, 2014. A separate order was entered that same day, which found aggravated circumstances as to both Mother and Father, and ordered that CYS not provide reunification services.[4] *Id*.

On September 25, 2014, the orphans' court found that Mother was responsible for J.E.D.'s injuries, and that J.E.D. was the victim of child abuse, as Mother and Father were J.E.D.'s sole caregivers at the time he fell. Petitioner's Exhibit 1. Mother was arrested on December 16, 2014, and

---

[4] On April 6, 2015, this Court affirmed the orders adjudicating J.E.D. dependent and finding aggravated circumstances. *See In the Interest of J.E.D.*, 121 A.3d 1121 (Pa. Super. 2015) (unpublished memorandum).

charged with "Child Endangerment," due to the injuries suffered by J.E.D.[5] N.T., 7/30/15, 17-18.

On April 21, 2015, CYS filed a petition to terminate the parental rights of Mother and Father involuntarily. A termination hearing was held on July 30, 2015. The orphans' court heard the testimony of CYS caseworker, Melanie Robinson; Youth Service Bureau reunification counselor, Raelee Hulek; and CYS caseworker, Robin Cain. Following the hearing, on September 9, 2015, the orphans' court entered its order terminating the parental rights of Mother and Father. Mother timely filed a notice of appeal on September 22, 2015, along with a concise statement of errors complained of on appeal. Father timely filed a notice of appeal on October 6, 2015, along with his own concise statement of errors complained of on appeal.

Mother raises the following issue for our review. "Whether the orphans' court committed an abuse of discretion or error of law when it concluded that [CYS] established grounds for termination of parental rights under 23 Pa.C.S.A. §2511(a)(2) or (a)(5)?" Mother's brief at 4. In addition, Father raises the following issue for our review. "Was there clear and

---

[5] Mother also was charged in connection with an injury suffered by H.R.D. N.T., 7/30/15, at 17. Mother received a sentence of four to twenty-three and a half months of incarceration, but she was paroled by the time of the termination proceedings. *Id*. at 19.

convincing evidence presented so as to justify termination of . . . [F]ather's parental rights pursuant to either 23 Pa.C.S.A. § 2511(a)(2) or § 2511(a)(5)?" Father's brief at 4.

We address these claims mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by § 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention

paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted).

In this case, the orphans' court terminated the parental rights of Mother and Father pursuant to §§ 2511(a)(2), (5), and (b). We need only agree with the orphans' court as to any one subsection of § 2511(a), as well as § 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). Here, we analyze the court's decision to terminate under §§ 2511(a)(2) and (b), which provide as follows.

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions

- 6 -

described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

We first address whether the trial court abused its discretion by terminating the parental rights of Mother and Father pursuant to § 2511(a)(2).

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003) (citation omitted)). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002) (citations omitted).

Instantly, the orphans' court found that the repeated and continued incapacity, abuse, neglect, or refusal of Mother and Father has caused J.E.D. to be without essential parental control or subsistence necessary for his physical and mental well-being. Trial Court Opinion, 9/9/15, at 3. The orphans' court further found that Mother and Father cannot, or will not, remedy this situation. *Id*. With respect to Mother, the court emphasized

- 7 -

the injuries suffered by J.E.D. only one day after his birth. *Id*. The court also observed that Mother failed to make progress when provided with reunification services for her three older children, and that she performed poorly during her visits with J.E.D. *Id*. With respect to Father, the orphans' court emphasized that Father failed to complete Project Point of Light, and that he continues to pose a risk to minor children. *Id*.

Mother and Father argue that CYS failed to present clear and convincing evidence that they will be unable to remedy the conditions and causes of their parental incapacity. Mother's brief at 10, 13-14; Father's brief at 11, 14-15. Mother concedes that she was unable to parent her three older children on her own. Mother's brief at 13. However, she asserts that she has made "concrete progress" in her life, and stresses in particular her relationship with Father. *Id*. According to Mother, she enjoys a loving, stable relationship with Father, which stands in stark contrast to the "alcohol-fueled domestic violence" which she was subjected to in her previous relationship. *Id*. Mother insists that she and Father together were never given the opportunity to demonstrate their parenting abilities. *Id*. Father claims that he completed a year of treatment at Project Point of Light, and that his failure to complete additional treatment was due only to his indigence and lack of transportation, which should not be held against him. Father's brief at 14-15.

After a thorough review of the record in this matter, we conclude that the orphans' court did not abuse its discretion by involuntarily terminating the parental rights of Mother and Father. During the termination hearing, Youth Service Bureau reunification counselor, Raelee Hulek, testified that reunification services were provided to Mother with respect to her three older children from November 13, 2013, until November 13, 2014. N.T., 7/30/15, at 34. Reunification services ended unsuccessfully due to a lack of progress on the part of Mother. *Id*. Ms. Hulek noted that there were serious concerns with respect to Mother's parenting ability, and that Mother was "visibly overwhelmed" during her three hour visits with the children. *Id*. at 39. Ms. Hulek explained that some of these concerns included "failure to consistently set limits and provide the children with consequences, failure to supervise the children near busy roads, failure to limit food portion, . . . failure to support [D.M.D.'s] special needs related to potty training, [and] concerns regarding supporting [B.A.D.'s] special developmental needs[.]" *Id*. at 39-40. In addition, Ms. Hulek noted that Mother sometimes struggled to manage her emotions during visits, and would occasionally focus on her cell phone rather than the children. *Id*. at 40, 48.

Ms. Hulek further testified that CYS was concerned by Mother's lack of appropriate housing. *Id*. at 34-35. CYS offered to assist Mother in locating housing on a minimum of thirty-two occasions, "but she did not follow through with that." *Id*. at 35. CYS also offered to assist Mother in finding

employment so that she could afford an appropriate residence. *Id*. Mother accepted this assistance on only two of at least twenty-five occasions. *Id*. Mother was briefly able to obtain a part-time cleaning job. *Id*. However, she never was able to earn enough income to support herself or her children. *Id*. Mother also mismanaged her money, spending it on things like pay-per-view wrestling, rather than a security deposit. *Id*. at 36. Ms. Hulek noted that Mother lost her cleaning job after being arrested in December of 2014. *Id*. at 35, 42.

Finally, Ms. Hulek testified that CYS was concerned by Mother's ongoing relationship with Father. *Id*. at 36. Ms. Hulek explained that Father began receiving a second round of sex offender treatment in July of 2014. *Id*. at 43. Father was supposed to attend group meetings once per week. *Id*. However, in September of 2014, Ms. Hulek received a call from Father's evaluator at Project Point of Light, Ms. Patricia Clouser, who reported that Father failed to attend approximately five group meetings. *Id*. at 38, 43-44. In addition, Ms. Clouser believed that Father would benefit from attending a group for individuals with developmental delays. *Id*. at 44-45. Ms. Hulek acknowledged that this group was located in Clearfield County, a significant distance for Father to travel, but she explained that she provided Father with "a few different resources that he could call for assistance with that [.]" *Id*. at 45. In addition, Ms. Clouser reported that, "if all else fails that they were going to try to work out something where

- 10 -

someone could still come and meet with him in Bellefonte or State College and provide the same information that he would receive in a developmentally delayed group." *Id*. Ultimately, Ms. Hulek believed that Father was discharged from his local sex offender group due to lack of attendance, and that Father never transitioned to the group in Clearfield County. *Id*. at 45.

Accordingly, the record supports the conclusion of the orphans' court that the repeated and continued incapacity, abuse, neglect, or refusal of Mother and Father has caused J.E.D. to be without essential parental control or subsistence necessary for his physical and mental well-being. Moreover, Mother and Father cannot, or will not, remedy this situation. Mother has an extensive prior history with CYS, and she has demonstrated for years that she is incapable of caring for a child. Indeed, Mother failed to make it more than a day before J.E.D. suffered a serious injury while in her care. Mother also continues to maintain her relationship with Father.

Likewise, contrary to Father's argument on appeal, the record demonstrates that he was discharged from Project Point of Light due to his failure to attend local group meetings, and not due to a lack of transportation. Father's history as a sex offender, combined with his failure to complete treatment at Project Point of Light, confirm that he continues to present a serious risk to any minor placed in his care. It was proper for the court to conclude that J.E.D. should no longer be denied permanency. ***See***

- 11 -

***M.E.P.,*** 825 A.2d at 1276 ("A child's life simply cannot be put on hold in the

hope that the parent will summon the ability to handle the responsibilities of

parenting.") (citations omitted).

We next consider whether the orphans' court abused its discretion by

terminating the parental rights of Mother and Father pursuant to § 2511(b).[6]

We have discussed our analysis under § 2511(b) as follows.

> Subsection 2511(b) focuses on whether termination of parental
> rights would best serve the developmental, physical, and
> emotional needs and welfare of the child.  In ***In re C.M.S.***, 884
> A.2d 1284, 1287 (Pa.Super. 2005), this Court stated,
> "Intangibles such as love, comfort, security, and stability are
> involved in the inquiry into the needs and welfare of the child."
> In addition, we instructed that the trial court must also discern
> the nature and status of the parent-child bond, with utmost
> attention to the effect on the child of permanently severing that
> bond.  ***Id***.  However, in cases where there is no evidence of a
> bond between a parent and child, it is reasonable to infer that no
> bond exists.  ***In re K.Z.S.***, 946 A.2d 753, 762-63 (Pa.Super.
> 2008).  Accordingly, the extent of the bond-effect analysis
> necessarily depends on the circumstances of the particular case.
> ***Id***. at 63.

***In re Adoption of J.M.***, 991 A.2d 321, 324 (Pa.Super. 2010).

Here, the orphans' court found that terminating the parental rights of

Mother and Father would best serve the needs and welfare of J.E.D.  Trial

Court Opinion, 9/9/15, at 4.  The court observed that J.E.D. is bonded with

his foster parents, and with Mother's three older children, who reside in the

---

[6] While Mother and Father do not discuss § 2511(b) in the argument section
of their briefs, we will nonetheless consider this issue.  ***See In re C.L.G.***,
956 A.2d 999, 1010 (Pa.Super. 2008) (*en banc*) (considering § 2511(b)
despite the appellant's failure to challenge the trial court's analysis).

same foster home. *Id.* In contrast, the court concluded that visiting with Mother and Father is stressful to J.E.D., and that J.E.D. has not developed a significant bond with his parents. *Id*.

Again, we discern no abuse of discretion. CYS caseworker, Melanie Robinson, testified that Mother and Father initially were offered three hour-long visitations with J.E.D. per week, but sessions were reduced to twice per month for two hours each. N.T., 7/30/15, at 20. Ms. Robinson explained that the parents attended visitations with J.E.D. consistently. *Id*. at 24-25. However, Ms. Robinson described numerous problems which arose during the visits. For example, J.E.D. would sometimes cry during visits "for extended periods of time." *Id*. at 20. The staff supervising the visits would encourage the parents to use certain techniques in order to soothe J.E.D., but Mother and Father were not always receptive to those suggestions. *Id*. at 20-21. Ms. Robinson stated that J.E.D. is thriving in his pre-adoptive foster home. *Id*. at 21-22. She indicated that J.E.D. displays "a very clear bond" with his three older half-siblings, as well as his foster parents and the foster parents' biological children. *Id*.

CYS caseworker, Robin Cain, testified that visitations are stressful to J.E.D., and that he "spent the majority of the visits screaming and crying." *Id*. at 56. Ms. Cain explained that Mother and Father were reluctant to accept any recommendations from the visitation staff for the "first several months" of visits. *Id*. at 56-57. Ms. Cain opined that J.E.D. has no

significant bond with his biological parents, and that he instead is bonded with his pre-adoptive foster parents and his half-siblings. *Id*. at 60-61. Ms. Cain believed that it would be detrimental for J.E.D. to be removed from his foster family, because it is the only home he has ever known. *Id*. Significantly, Foster Parents are a permanent resource for both J.E.D. and his three half-siblings.

Thus, we find that the record confirms that terminating the parental rights of Mother and Father will best serve J.E.D.'s developmental, physical and emotional needs and welfare. J.E.D. has spent nearly his entire life residing with his pre-adoptive foster parents, and he is bonded with his entire foster family, including his older half-siblings. J.E.D. does not appear to be bonded with Mother or Father, and it is clear that J.E.D. will not suffer irreparable emotional harm if their parental rights are terminated.

Accordingly, we affirm the orphans' court order involuntarily terminating the parental rights of Mother and Father pursuant to 23 Pa.C.S. § 2511(a)(2) and (b).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/4/2016